# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **STACIE A. FRABOTTA**, | : | |
| 3863 N. Glenridge Rd. | | |
| Akron, OH 44319, | : | |
| | | |
| Plaintiff, | : | |
| | | |
| -vs- | : | **C O M P L A I N T** |
| | : | Trial by Jury Endorsed Hereon |
| | : | |
| **CITY OF AKRON, OHIO**, | : | |
| 166 S. High St. | | |
| Akron, OH 44308, | : | |
| | : | |
| and | | |
| | : | |
| **CLARENCE TUCKER, in his** | : | |
| **Official and Individual Capacity** | | |
| 166 S. High St. | : | |
| Akron, OH 44308 | | |
| | : | |
| and | | |
| | : | |
| **CHARLES TWIGG, in his** | | |
| **Official and Individual Capacity** | : | |
| 166 S. High St. | | |
| Akron, OH 44308, | : | |
| | | |
| and | : | |
| | | |
| **FLOYD EASLEY, in his** | : | |
| **Official and Individual Capacity** | | |
| 166 S. High St. | : | |
| Akron, OH 44308 | | |
| | : | |
| and | | |
| | : | |
| | | |
| | : | |

1

**RICHARD VOBER, in his**                    :
**Official and Individual Capacity**
166 S. High St.                              :
Akron, OH 44308
                                             :
                              Defendants.
_____

## NATURE OF THE ACTION

1.     This is an action instituted under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States enforced through the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.  §§ 621.01, *et seq.*, (2018 Supp.), Title I of the Americans with Disabilities Act of 1990, as amended and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e-1, *et seq.*, as amended (2018 Supp.) to vindicate federally protected rights against unlawful governmental employment practices.

## JURISDICTION AND VENUE

2.     Jurisdiction is invoked pursuant to the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States enforced through the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 626 (b) and (c), Title I of the Americans with Disabilities Act of 1990, as amended and Section 706(f) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-6(f) (2018 Supp.) (hereinafter referred to as "Title VII"), jurisdiction with respect to constitutional claims under 28 U.S.C. §§ 1331(a), 1337 and 1343(3).  Supplemental federal jurisdiction is asserted over related state law claims pursuant to 28 U.S.C. § 1367.

3.     With respect to claims under Title VII, the ADA and the ADEA, jurisdiction arises pursuant to receipt of a Notice of Right to Sue issued on April 18, 2022.  The notice accompanies this complaint and is incorporated by reference as Exhibit A.

4.     Venue in this Court is proper because the unlawful employment practices alleged were and continue to be committed within the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division.

## PARTIES

5.      Plaintiff Stacie A. Frabotta ("Frabotta") is a 52-year-old female who, at all relevant times, was employed by Defendant, City of Akron, Ohio and who has sought to perform her duties free from discriminatory restrictions on account of gender, disability and age and from retaliation for engaging in a protected activity.

6.     Defendant, City of Akron, Ohio (hereinafter, "Akron") is an employer as defined by the Title VII and the ADEA and at all relevant times was the employer of the Plaintiff.

7.     Defendants Clarence Tucker, Charles Twigg, Floyd Easley and Richard Vober are all current or former employees of the Akron Fire Department and superiors of Frabotta. Each of these Defendants discriminated and retaliated against Frabotta.

## STATEMENT OF THE FACTS

8.     Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

9.     Frabotta joined the Akron Fire Department in April 2000.

10.    After learning a little more about what positions fire fighters could hold within the Akron Fire Department, Frabotta aspired to rise through the ranks.

11.    Frabotta quickly realized that in order to achieve her dream, she would have to work harder than 97% of her peers.

12.    The reason that Frabotta would have to outwork her colleagues, is because she is female.

13.    Roughly 3% of all firefighters in the United States are female.

14.    It wasn't until 1981 that the state of Ohio even had a full-time female firefighter.

15.    Frabotta knew that embarking on a career in the "brotherhood", a common nickname for those who are firefighters, would be challenging but not even she realized the level of discrimination she would face simply because she was a woman.

16.    When Frabotta joined the Akron Fire Department, she was one of four (4) female fire fighters.

17.    There are currently very few female firefighters working for Akron, Ohio out of roughly 350 career firefighters employed by the city.

18.    In or around 2004, Frabotta became the first ever pregnant firefighter at the department.

19.    While pregnant and following her pregnancy, she was often on the receiving end of hurtful and discriminatory comments.

20.    Frabotta was forced to tolerate the comments in order to continue on with her dream of advancing within the department.

21.    Frabotta felt that complaining would put a target on her back.

22.    In 2006, Frabotta submitted a letter of interest to be trained and moved to the Fire Investigative Unit ("FIU").

23.    In order to be a full-time fire investigator for Akron, a firefighter must graduate from OPOTA (Ohio Peace Officer Training Academy) and also must complete an "origin and cause" course.

24.    In order to be a full-time fire investigator for Akron, a firefighter must be a commissioned police officer.

25.    The request to be trained and moved to the FIU was denied.

26.    In 2008, Frabotta suffered a shoulder injury after falling through an upstairs floor while fighting a house fire.

27.    Since that time, Frabotta has had continued shoulder problems.

28.    In 2015, Frabotta once again submitted her request to attend OPOTA and complete the origin and cause course.

29.    The request was denied for a second time.

30.    Instead of permitting her to attend, Akron chose four younger male firefighters to begin taking courses and go to the academy.

31.    While working on light duty in 2017 in the Fire Prevention Bureau, Frabotta renewed her interest in conducting fire investigations.

32.    In the latter part of 2017, Frabotta was cleared from light duty but was asked to stay in the Fire Prevention Bureau.

33.    While in the Fire Prevention Bureau, Frabotta inquired about being permitted to take a background investigations course.

34.    Her request was denied.

35.    Frabotta was forced to pay for the class and attend the class on her own personal time while her less qualified younger male colleagues were permitted to attend the course and have it paid for by Akron.

36.    Even after completing the course, Frabotta was still not permitted to conduct background investigations.

37.    In 2018, two of Frabotta's male colleagues were permitted to take time off to attend OPOTA.

38.   In 2019, a male colleague of Frabotta submitted a request to attend the National Fire Academy's Origin & Cause class in Emmitsburg, Maryland.

39.   His request was approved and paid for by Akron.

40.   Seeing the course be approved for her younger male colleague, Frabotta submitted a request to attend a local origin and cause course at Cuyahoga Community College.  The course was less expensive and did not require any travel.

41.   Frabotta's request was denied by Deputy Chief Richard Vober ("Vober").

42.   Frabotta, not wanting to give up on her goal to be become a fire investigator, asked if she paid for the class herself would she be permitted to have the time off to attend the course.

43.   Her request was denied by Vober.

44.   Frabotta than asked if she paid for the class herself and used her own vacation time whether she would be granted the days off to attend.

45.   Frabotta was told that Vober would never assign her to fire investigations so she should save her money and vacation time.

46.   Frabotta, who had already been accepted into the class, was then forced to withdraw.

47.   Later in 2019, for the first time in a number of years, Akron was hosting an OPOTA training academy.

48.   Frabotta requested to be permitted to attend.

49.   Frabotta was permitted by Akron fire officials to attend the pre-admission agility test.

50.    Akron fire officials permitted Frabotta to take the per-admission agility test assuming she would fail.

51.   Frabotta passed the agility test.

52.  After Frabotta passed the agility test, for the first time in Akron's history, it decided to require those who passed the agility test to interview and take a polygraph test.

53.  Another barrier created to try and stop Frabotta, an older female, from graduating from OPOTA.

54.  From December 2019 through May 2020, Frabotta attended OPOTA.

55.  At the end of May 2020, Frabotta graduated from OPOTA with one of the highest scores in the class.

56.  Frabotta received one of the prestigious awards presented by the instructors at graduation for her hard work and marks during the course.

57.  In June of 2020, Frabotta had an appointment with a shoulder surgeon as she was having pain in her shoulder.  Frabotta received cortisone injections yet no imaging was done at that time.

58.  Beginning in June 2020, following her passage of OPOTA, Frabotta was permitted to assist in the Fire Investigation Unit.  Although she was permitted to assist in the unit, Frabotta was not formally assigned to the unit.

59.  Frabotta was not permitted to become a full-time fire investigator because she had not yet completed the origin and cause course.

60.  She had not completed the course because Akron had denied her requests to attend the course in favor of letting less qualified younger males attend in the past.

61.  Akron instead brought in a younger male firefighter to work the full-time fire investigator shift.  This male fire fighter was not even a commissioned police officer in Akron like Frabotta.

62.  On June 29, 2020, Chief Clarence Tucker ("Tucker") approached Frabotta at a memorial service for a colleague who had passed away.  Tucker told Frabotta he called the Akron police

department's training academy several times over the past months to make sure that Frabotta was actually passing the class because he didn't believe she would be able.

63.    In early September, still having not been transferred to the Fire Investigation Unit, Frabotta interviewed for a promotional opportunity to become a lieutenant.

64.    The following day, Frabotta was told she was being promoted to lieutenant.

65.    Tucker told Frabotta that because she was now a lieutenant, he would be sending her back to the "line" as opposed to working in fire investigations.

66.    The line is comprised of working at a fire station actively responding to calls and requires a very different skill set than fire prevention or fire investigations.

67.    Tucker told Frabotta he could not have two lieutenants working on fire investigations even though there had been up to three lieutenants in the Fire Investigation Unit in the past.

68.    Tucker also told Frabotta she could not be moved to the Fire Investigation Unit because she had not completed her origin and cause class.

69.    The same class Akron had routinely denied Frabotta from attending while permitting less qualified younger male colleagues to attend.

70.    Tucker than told Frabotta that since she had never "acted" as fire officer prior to this promotion and, because she was a female, Frabotta needed to go to the line to get "credibility."

71.    No other male fire fighters with roughly twenty years of experience being promoted were told that they needed to go to the line to get "credibility".

72.    Not stopping there, Tucker then stated that "the boys" would likely give Frabotta a hard time out on the line because she was a woman and that she would just have to put up with it and tough it out.

73.  Tucker told Frabotta that if she tolerated that for six months, he would see if he could find her a spot in the Fire Investigation Unit.

74.  No male firefighters were forced to endure discriminatory treatment in order to be considered for the Fire Investigation Unit.

75.  As Frabotta had not been on the line in years, she requested to be re-familiarized with duties of a line fire fighter for a few days ahead of her first day back in that role.

76.  On September 28, 2020, during her first day of training, Frabotta injured her shoulder.

77.  The officer in charge of the training, Scott Pascu, immediately assigned Frabotta to light duty.

78.  Deputy Chief Charles Twigg ("Twigg") barred the officer in charge of the training from noting any injury occurred on Frabotta's forms.

79.  Rumors than began to spread that senior leadership within the department believed that Frabotta was faking her injury.

80.  Twigg approached Frabotta soon after the injury and threatened to extend her lieutenant probationary period as a result of the injury.

81.  No other male fire fighter has had a promotion threatened because of an injury on the job.

82.  Tucker, Twigg and Vober began telling others within the department that they felt "duped" by Frabotta.

83.  On October 6, 2020, Tucker spoke with Captain Mike Haas ("Haas") and told him he was angry with Frabotta for allegedly faking her injury and allegedly lying to him.

84.  On October 7, 2020, Frabotta was informed that if she filed for workers compensation, Akron would fight her request.

85.  No such similar threats were made to injured male colleagues.

9

86.   On October 8, 2020, Frabotta was told by Twigg and Vober that, in the future, she would be permitted to work in the Fire Investigation Unit while on light duty but would not formally be assigned to the unit.

87.   Not being assigned to the Fire Investigation Unit while working within the unit is not a normal practice or procedure.

88.   Frabotta was then permitted to attend the origin and cause course due to Akron being short-staffed.

89.   On October 13, 2020, Frabotta was moved from a traditional 40-hour work week to 24-hour shifts.

90.   On November 5, 2020, District Chief Floyd Easley ("Easley") and Haas came into Frabotta's office and informed her starting on November 9th, she would no longer be permitted to work in the fire investigative unit.

91.   They told Frabotta that by letting her stay, they would be giving her what she wanted.

92.   Frabotta was told she would begin working light duty in the Fire Prevention Bureau doing inspections because the city was short-staffed.

93.   At the time there were other fire inspectors on light duty not doing inspections.

94.   On November 24, 2020, Frabotta was falsely accused of falsifying records.

95.   After challenging the false allegation, she was told by a fire prevention manager that they would "let it slide".

96.   On November 30, 2020, Frabotta found out that she had torn her bicep and needed shoulder replacement in both shoulders.

97.   In early December 2020, three other younger male firefighters all received an email from Vober stating they have been approved to go to an advanced origin and cause class.

98.   Frabotta was not included on the list even though they had all gone through the basic origin and cause class together.

99.   Frabotta was the only one in the group OPOTA certified.

100.  Although it was not proper, the other males had started to pick up shifts in the Fire Investigative Unit even though they were not OPOTA certified.

101.  On December 1, 2020, Frabotta was told by Haas that she would be permitted to work two days per week in the Fire Investigations Unit but would still not be transferred to the unit formally.

102.  On December 10, 2020, Vober called the Fire Investigation Unit asking for Lieutenant Nate Falcone, who oversaw the unit.

103.  Frabotta informed Vober that Falcone was on vacation and would not be back until December 28, 2020.

104.  Vober asked who was running the unit in his absence and was told "no one."

105.  Vober immediately told Frabotta that she would be permitted to work there every day in Falcone's absence and manage the department.

106.  On December 31, 2020, Frabotta had a total right shoulder replacement and a repair of her torn bicep.

107.  On March 8, 2021, Frabotta returned to the Fire Investigation Unit on light duty working 40-hour weeks.

108.  In May 2021, Frabotta was denied the opportunity to assist in conducting background investigations of new hires.

109.  Frabotta was told by Easley and Haas that permitting her to do so would again "give her what she wanted."

110.  Less qualified males were permitted to take on the role of conducting background investigations of new hires.

111.  On May 17, 2021, Frabotta was required to train others on how to conduct background investigations but was still not permitted to conduct them herself.

112.  On May 25, 2021, Frabotta notified Captain Haas about confidentiality concerns within the Fire Investigation Unit.

113.  Personnel not permitted in the department had been freely entering and leaving with access to confidential materials.

114.  Additionally, it was discovered that individuals were taking pictures of polygraph results and other violations of city policy were occurring.

115.  Frabotta's concerns were not taken seriously and senior leadership were frustrated with her reporting on individuals with whom they were friends.

116.  During the summer of 2021, the Akron fire administration began calling numerous younger male lieutenants to see if they would be willing to go to OPOTA, claiming that the Fire Investigation Unit was short-staffed and that they needed another lieutenant full time in the unit.

117.  Frabotta, who was qualified for the role, was not considered.

118.  During a meeting on July 20, 2021, Frabotta was ignored and inappropriately treated during a meeting with Twigg and Vober.

119.  On July 28, 2021, Falcone met with Chief Tucker and informed him that he would like to switch from the 40-hour work week in the Fire Investigation Unit to a 24-hour shift and go back to the line.

120.  Falcone recommended that Frabotta be assigned full time to the Fire Investigation Unit.

121.  Tucker rebuffed Falcone's suggestion.

12

122. Tucker never required Falcone to "gain credibility" on the line prior to becoming a lieutenant in the Fire Investigation Unit.

123.  On or around August 19, 2021, Haas informed Frabotta and Falcone that Vober and Tucker were never going to let her be fully transferred to the Fire Investigation Unit and that her career was over.

124.  On August 24, 2021, just prior to leaving for the day, Haas and Easley entered Frabotta's office and, while shutting and blocking the door, Easley informed Frabotta she was being reassigned to the Safety Communications Unit and away from the Fire Investigation Unit.

125.  On August 25, 2021, Frabotta reported to her new unit where there was no computer for her and no present work to be done.

126.  Senior leadership began telling other employees they needed to "clean house" in the Fire Investigation Unit.

127.  During a meeting in September 2021 with her new direct supervisor, Leon Henderson, Frabotta was told she would have a "clean slate" in her new unit and was told it was rumored that she had a lot of "issues" within her old unit.

128.  On October 11, 2021, Frabotta was told by Henderson that she would, once again, need to do fire inspections.

129.  When asked why she had to be transferred to safety communications if she would quickly go back to doing tasks for other departments, she was told it was senior leaderships' decision.

130.  On October 14, 2021, Frabotta was called by Lieutenant Josef Falkenstein who works in the Fire Prevention Bureau.

131.  Frabotta was informed by Falkenstein that she would be given a car and assigned inspections from the Safety Communications Unit.

132.  No one else conducting inspections reported to the Safety Communications Unit.

133.  Frabotta was told that she would be doing 10 inspections per day but would not be permitted to work out of any of the fire stations.

134.  Falkenstein told Frabotta that he was very surprised by what was going on and Frabotta's assignment.

135.  Over the next several months, every conversation between Frabotta and Falkenstein resulted in him apologizing for what the Akron Fire Department's administration was doing to Frabotta.

136.  On October 15, 2021, Frabotta picked up her vehicle which had a flat tire and rusted rims.

137.  When she questioned why she received that vehicle, Frabotta was told by firefighter Kristen Elefritz that Haas specifically gave her the "un-safest" car and told Elefritz that "if anything happens, at least she will be in the city."

138.  Throughout the fall and winter of 2021, several other male lieutenants and firefighters that were inspectors assigned to light duty were not assigned to do fire inspections, yet it was mandatory for Frabotta.

139.  On December 10, 2021, Frabotta was informed by Twigg that she would now be reporting to him as her current supervisor went out on FMLA.

140.  No other lieutenant on light duty had ever been required to report to a deputy chief only because their direct supervisor was on FMLA.

141.  On January 13, 2022, Frabotta was summoned to a meeting with human resources.

142.  For an unknown reason, Twigg showed up at the meeting.

143.  During the meeting, Frabotta's current injury was discussed.

144. A nerve was nicked during Frabotta's shoulder replacement surgery, and she continued to have numbness and tingling in her dominant hand.

145. Frabotta requested an accommodation and asked to remain on desk duty as there was an obvious need for inspectors and leadership in the Fire Investigation Unit.

146. Frabotta was then informed that Twigg intended to fire her due to her injury.

147. On January 13, 2022, Frabotta notified human resources that the Akron fire administration had created a hostile work environment for her.

148. On February 10, 2022, Frabotta complained to Deputy Mayor Randy Briggs of the hostile work environment she had been facing.

149. On March 8, 2022, Frabotta was placed on medical leave.

150. Frabotta was informed by Akron's human resources department that she had until December 31, 2022, to return to full duty or her employment would be terminated.

151. The human resources department representative, Amy Mills ("Mills"), acknowledged that the city would rather have Frabotta off work as opposed to being productive while they claim that departments are short-staffed.

152. Following her meeting, Union President Kevin Gostkowski, approached Deputy Chief Twigg regarding their short-staff concerns in the Fire Prevention Bureau.

153. Twigg informed Gostkowski that he may need to put out bids and even a possible mandate.

154. Gostkowski recommended Frabotta as she had ample experience and Twigg stormed off without a response.

155. Frabotta was also informed that she would be stripped of her police commission as a result of her not being moved to a full-time fire investigator position.

156.  Two other male colleagues who left or were not assigned to the Fire Investigation Unit were not stripped of or required to relinquish their police commission.

157.  The Fire Investigation Unit has had a history of discriminating against women and older employees.

158.  Recently, two firefighters over the age of 50 were involuntarily removed from the unit.

159.  Additionally, no women have ever served on the Fire Investigation Unit.

160.  As a result of the conduct of Defendants, Frabotta is at risk of losing her job and has lost the opportunity to work in a desired unit where less qualified younger males have been given positions.

161.  As a result of the acts and conduct of Defendants, Plaintiff is at risk of losing her longstanding employment, has lost the opportunity to work in a desired unit and has suffered discrimination based upon her gender, age, disability and as retaliation for her complaints.

162.  As a result of the acts and conduct of Defendants, Plaintiff has suffered serious, genuine and consequential damages including personal injury, pain, suffering, emotional harm, mental distress and loss of quality of life.

163.  The acts and conduct of the Defendants were intentional, reckless and in wanton and reckless disregard of the rights and feelings of Frabotta.

## **Count I – Violation of the Equal Protection Clause**

164.  Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

165.  All actions taken against Frabotta were done under color of state law by government officials in their governmental positions.

16

166. On behalf of Defendant Akron, Tucker, Vober, Twigg and Easley engaged in acts and practices which constitute governmental discrimination and governmental retaliation.

167. Executive officials of Defendant Akron were aware of the governmental discrimination and governmental retaliation.

168. Frabotta is a member of a statutorily protected class because she is female and 52 years old.

169. Efforts were taken by the Defendants to stop Frabotta from becoming a fire investigator because of her gender and age.

170. Frabotta was denied the opportunity to become a fire investigator and is at risk of losing her job because of her gender and age.

171. Other less qualified younger males were permitted to train and become fire investigators as compared to Frabotta.

172. Frabotta was denied opportunities because of her gender and age despite being a better candidate for the position.

173. Frabotta was treated less favorably than younger male colleagues because of her gender and age.

174. Defendant Akron has a practice, pattern and apparent policy against women and older employees being given the same opportunity as younger males.

175. As a result of the acts and conduct of the Defendants, Plaintiff suffered in the potential loss of her longstanding employment, opportunity to become a fire investigator, her salary, benefits, retirement and related matters.

176.  As a result of the acts and conduct of the Defendants, Plaintiff has suffered serious, genuine and consequential damages including personal injury, pain, suffering, emotional harm, mental distress and loss of quality of life.

177.  The acts and conduct of the Defendants were intentional, reckless and in wanton and reckless disregard of the rights and feelings of Plaintiff.

## Count II – Gender Discrimination

178.  Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

179.  Frabotta is a member of a protected class as a woman.

180.  Frabotta was denied the opportunity to train and become a fire investigator because of her gender.

181.  Frabotta was treated less favorably than male colleagues because of gender.

182.  Frabotta was passed over for the opportunity to become a fire investigator in favor of less qualified male fire fighters.

183.  Frabotta was given a different set of standards in her efforts to become a fire investigator compared to her male colleagues.

184.  Frabotta was retaliated against for continuing her pursuit of becoming a fire investigator.

185.  As a result of the acts and conduct of the Defendants, Plaintiff suffered in the risk of losing her longstanding employment, opportunity to become a fire investigator, her salary, benefits, retirement and related matters.

186.  As a result of the acts and conduct of the Defendants, Plaintiff has suffered serious, genuine and consequential damages including personal injury, pain, suffering, emotional harm, mental distress and loss of quality of life.

187. The acts and conduct of the Defendants were intentional, reckless and in wanton and reckless disregard of the rights and feelings of Frabotta.

## **Count III – Age Discrimination**

188. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

189. Frabotta is a member of a protected class, as she is fifty-two years old.

190. Frabotta sought to become a fire investigator and was denied the opportunity because of her age.

191. Frabotta was denied the opportunity to attend required trainings because of her age.

192. Frabotta was passed over for the opportunity to become a fire investigator in favor of less qualified younger males.

193. Frabotta was retaliated against for continuing her pursuit of becoming a fire investigator.

194. Frabotta was denied certain opportunities because of her age.

195. As a result of the acts and conduct of the Defendants, Plaintiff is at risk of losing her longstanding employment, opportunity to become a fire investigator, her salary, benefits, retirement and related matters.

196. As a result of the acts and conduct of the Defendants, Plaintiff has suffered serious, genuine and consequential damages including personal injury, pain, suffering, emotional harm, mental distress and loss of quality of life.

197. The acts and conduct of the Defendants were intentional, reckless and in wanton and reckless disregard of the rights and feelings of Frabotta.

## COUNT IV- Disability Discrimination

198.  Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

199.  After being diagnosed with numerous serious injuries, Frabotta was ordered to light duty.

200.  Prior to the order, Frabotta had already been successfully working at numerous lighter-duty positions for the Akron Fire Department.

201.  Following the light-duty order and becoming disabled, Defendants have now alleged that, if Frabotta cannot come back to work as a full-duty firefighter by December, she will be fired.

202.  Frabotta has requested the accommodation to continue working lighter-duty positions, as she had been doing prior to be becoming disabled.

203.  Plaintiff's disability was not reasonably accommodated by the Defendants.

204.  Plaintiff was retaliated against for requesting a reasonable accommodation.

205.  Plaintiff's employment has been threatened because she requested a reasonable accommodation for her disability and because of the disability itself.

206.  Defendants had assigned Frabotta to jobs which only require lighter duty for years.

207.  Defendants are now only requiring Frabotta to return as a full-duty firefighter to harass and attempt to fire her.

208.  As a result of the acts and conduct of the Defendants, Plaintiff is at risk of losing her longstanding employment, opportunity to become a fire investigator, her salary, benefits, retirement and related matters.

209.  As a result of the acts and conduct of the Defendants, Plaintiff has suffered serious, genuine and consequential damages including personal injury, pain, suffering, emotional harm, mental distress and loss of quality of life.

**COUNT V- Retaliation**

210. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

211. Plaintiff engaged in protected activity when she complained to both human resources and the deputy mayor about her unlawful treatment.

212. Following her complaint, Plaintiff was placed on medical leave and forced to use her accrued sick and personal days.

213. Following her complaint, Plaintiff was told she had until December 31, 2022, to return to full time duty or her employment would be terminated.

214. As a result of the acts and conduct of the Defendants, Plaintiff is at risk of losing her longstanding employment, opportunity to become a fire investigator, her salary, benefits, retirement and related matters.

215. As a result of the acts and conduct of the Defendants, Plaintiff has suffered serious, genuine and consequential damages including personal injury, pain, suffering, emotional harm, mental distress and loss of quality of life.

**COUNT VI- Intentional Infliction of Emotional Distress**

216. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

217. Being harassed and discriminated against under color of state law would be a traumatizing and disturbing experience for any employee.

218. Defendants each knew their actions would result in serious emotional and mental distress.

219. Defendants each knew their conduct would inflict serious emotional and mental injury on Plaintiff.

220.  Defendants' actions exceeded all reasonable bounds of decency and was intolerable in a civilized community.

221.  Defendants' actions proximately caused Plaintiff's emotional injuries, psychological injuries and loss of quality of life.

222.  The mental anguish suffered by Plaintiff was serious, consequential and should not have to be endured by any governmental employee.

223.  The acts and conduct of Defendants were intentional, malicious and in wanton and reckless disregard of the rights and feelings of Plaintiff.

224.  The acts and conduct of the Defendant were undertaken with deliberate indifference.

225.  Frabotta has sustained significant emotional injuries arising out of the Defendants' unlawful actions.

WHEREFORE, Plaintiff respectfully requests the Court to grant the following relief:

A.   Declare that the acts and conduct of the Defendants constitutes violations of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, the Civil Rights Act of 1871, 42 U.S.C. §1983, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621.01, *et seq.* (2018 Supp.), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e-1, *et seq.*, as amended (2018 Supp.) and Ohio law;

B.   Grant to the Plaintiff and against Defendant, City of Akron, a permanent injunction enjoining Defendant, its officers, agents, employees, successors, assigns, and all persons in active concert of participation with it, from engaging in any employment practices, which discriminate or retaliate on the basis of age, gender and disability through the use of governmental authority;

C.   Order Defendant, City of Akron, to institute and to otherwise carry out policies, practices and programs which provide equal employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices;

D.      Order Defendants to make whole Plaintiff by providing appropriate pay with prejudgment interest and for other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

E.      Grant to Plaintiff against Defendants appropriate compensatory damages;

F.      Grant to Plaintiff against Defendants Tucker, Easley, Twigg and Vober appropriate exemplary and punitive damages;

G.      Award Plaintiff costs in this action including statutory reasonable attorneys' fees as provided by statute;

H.      Grant such further relief as the Court deems just or equitable and in advance of the public interest.

Respectfully submitted,

KLEBANOW LAW, LLC

/s/ Jared S. Klebanow
JARED S. KLEBANOW (0092018)
850 Euclid Ave. Ste. 701
Cleveland, Ohio 44114
Telephone: 216-621-8230
E-Mail: jklebanow@klebanowlaw.com
Attorney for Plaintiff

**TRIAL BY JURY DEMANDED**

Plaintiff, Stacie A. Frabotta, hereby demands trial by jury.

/s/ Jared S. Klebanow
JARED S. KLEBANOW (0092018)